# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                        Case No. 2:22-cr-10007-MSN

CHARLES E. PETTIGREW, III,

    Defendant.

## ORDER OVERRULING IN PART GOVERNMENT'S OBJECTIONS, ADOPTING IN PART MAGISTRATE JUDGE'S REPORT, AND GRANTING DEFENDANT'S MOTION TO SUPPRESS

Before the Court is Defendant Charles Pettigrew's Motion to Suppress (ECF No. 129) seeking to exclude evidence obtained during the search of his residence on July 8, 2020. Magistrate Judge York issued a Report and Recommendation (ECF No. 145, "Report") recommending that the Motion be granted. The Government filed timely objections to the Report. (ECF No. 149.) Defendant responded to those objections. (ECF No. 155.)

After careful consideration and having conducted a de novo review of the entire record, including the transcript (ECF No. 141) from the hearing held before the Magistrate Judge on June 12, 2024, the Court **OVERRULES IN PART** the Government's objections, **ADOPTS IN PART** the Magistrate Judge's Report, and **GRANTS** Defendant's Motion to Suppress.

## BACKGROUND

On July 8, 2020, officers of the West Tennessee Judicial Violent Crime and Drug Task Force executed a search warrant at Defendant's residence located at 4065 West Van Hook Street,

Milan, Tennessee. (ECF No. 129-2 at PageID 254.) The warrant, issued by a part-time Tennessee state juvenile court judge, was supported by an affidavit from Special Agent Jason Williams ("SA Williams"). (*Id*. at PageID 251–54). The search resulted in the seizure of approximately 19 grams of methamphetamine, U.S. currency, ammunition, and other items. (*Id*. at PageID 255.)

Several irregularities of concern appear in SA Williams' warrant and affidavit. (ECF No. 129-1.) The warrant contains incorrect identifying information, including a different individual's name, gender, ethnicity, date of birth, and social security number. (*Id*. at PageID 254.) A handwritten notation on the warrant states, "[s]earch warrant needs to be amended from [another person] to Charles Pettigrew." (*Id*.) The affidavit also references an alternate address—2232 Dodson Street in Humbolt, Tennessee—inconsistent with Defendant's alleged address listed elsewhere. (*Id*. at PageID 258.) During testimony, SA Williams acknowledged using a template from a prior warrant and failing to thoroughly update all details, stating, "I use a template… and hopefully go through and change all the pertinent information… and on that one, I just left it on there on accident. My proofreader missed it too." (ECF No. 141 at PageID 379.)

Defendant filed a Motion to Suppress, arguing that the affidavit contained inaccuracies, false statements, and material omissions that invalidated the probable cause for the warrant under *Franks v. Delaware*, 438 U.S. 154 (1978). (ECF No. 129.) Specifically, the defendant contends that:

1. The affidavit omitted crucial information about the confidential source's veracity, reliability, and basis of knowledge. (ECF No. 129 at 6–7.)

2. The affidavit mischaracterized Mr. Huey as an "unwitting party" when he was actually the original target of the investigation. (*Id.*)

3. The affidavit omitted the length of time that elapsed—and the additional stop—between picking up Mr. Huey and arriving at Defendant's residence. (*Id.*)

4. The affidavit failed to establish a nexus between the place to be searched and the evidence to be sought. (*Id.*)

The Magistrate Judge conducted a hearing and issued a Report recommending that the Motion to Suppress be granted. (ECF No. 145.) The Government objects to the Report on several grounds, which will be addressed below. (ECF No. 149.)

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59, a district court may refer a motion to suppress to a magistrate judge for the preparation of a report and recommendation. "The magistrate judge must promptly conduct the required proceedings [and] enter on the record a recommendation for disposing of the matter, including any proposed findings of fact." Fed. R. Crim. P. 59(b)(1). If a party files timely objections to the recommendation, the district court must consider those objections *de novo* and "accept, reject, or modify the recommendation." Fed. R. Crim. P. 59(b)(3). Failure to object to a magistrate judge's findings or conclusions results in waiver of those objections. Fed. R. Crim. P. 59(b)(2).

"The filing of objections to a magistrate [judge]'s report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). Therefore, objections to a magistrate judge's report must be "specific." Fed. R. Crim. P. 59(b)(2). Vague, general, or conclusory objections are improper, will not be considered by the reviewing court, and are "tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001); *see also Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("[A] general objection to a magistrate [judge]'s report, which fails to specify the

issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious."); *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004) ("An 'objection' that does nothing more than state a disagreement with a magistrate [judge]'s suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context."). The Court need not review—under a *de novo* or any other standard—those aspects of a report and recommendation to which no objection is made. *Thomas*, 474 U.S. at 150–52.

## FINDINGS OF FACT

In his Report, Magistrate Judge York discusses the factual background for Defendant's Motion to Suppress. (*See* ECF No. 145 at PageID 416–22.) Although the Government raised legal objections to the Report, the Government has not challenged the Magistrate Judge's background discussion. Therefore, the Court **ADOPTS** and incorporates by reference these facts.[1]

## DISCUSSION

**A.    Applicable Law**

The Fourth Amendment guarantees that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The magistrate judge must consider the "totality of the circumstances" in determining whether probable

---

[1] The factual background in this matter is extensive and has been clearly explained by the Magistrate in his Report. (*See* ECF No. 145 at PageID 416–22). As there have been no objections to the facts, and the Court has adopted them as written, there is no need to repeat what has already been stated, and the Magistrate Judge's findings of fact are incorporated by reference.

4

cause exists. *Id.* Traditionally, a reviewing court must accord "great deference" to a magistrate judge's determination of probable cause and assess only whether a "substantial basis" existed for that finding. However, the U.S. Supreme Court cautions that reviewing courts must not "defer to a warrant based on an affidavit that does not" provide the magistrate with a substantial basis for determining the existence of probable cause. *United States v. Leon*, 468 U.S. 897, 915 (1984) (quoting *Illinois v. Gates*, 462 U.S. 213, 239 (1983)).

Under *Franks v. Delaware*, a defendant is entitled to a hearing to challenge a search warrant affidavit if he makes a substantial preliminary showing that the affidavit contains deliberate falsehoods or statements made with reckless disregard for the truth and that the allegedly false statements were necessary to the finding of probable cause. *Franks*, 438 U.S. at 155–56. When omissions are at issue, the defendant must show that the affiant intentionally omitted information with the intent to mislead the magistrate judge and that the omission was material to the finding of probable cause. *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997); *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998).

Even if a search warrant is invalid, evidence obtained pursuant to the warrant may still be admissible under the good-faith exception established in *United States v. Leon*, 468 U.S. 897 (1984). The good-faith exception does not apply when: (1) the magistrate was misled by information in the affidavit that the affiant knew was false or should have known was false except for his reckless disregard of the truth; (2) the issuing magistrate wholly abandoned his judicial role; (3) the affidavit is so lacking in indicia of probable cause to render official belief in its existence entirely unreasonable; or (4) the warrant is so facially deficient that the officers cannot reasonably presume it to be valid. *Id.* at 914–23.

5

## B.     Application of the Correct Legal Standard under *Franks*

The Government objects to the Magistrate Judge's application of the legal standard for omissions under *Franks v. Delaware*, arguing that the Magistrate Judge erred by not applying the higher standard requiring an intent to mislead. (ECF No. 149 at PageID 454–55.) The Government contends that, in cases involving omissions, a defendant must show that the affiant omitted the information with the intention to mislead and that the omission was critical to the finding of probable cause. (*Id.*)

The Magistrate Judge acknowledged that there is an inconsistency in Sixth Circuit precedent regarding the standard for omissions but chose to apply the standard requiring a showing that the omissions were made knowingly and intentionally or with reckless disregard for the truth. (ECF No. 145 at PageID 423 n.6.)

The Sixth Circuit has indeed recognized this inconsistency. In *United States v. Davis*, 84 F.4th 672, 681–82 (6th Cir. 2023), the court noted that while some cases require an intention to mislead, others suggest that reckless disregard is sufficient. However, we are bound by Sixth Circuit precedent, which establishes that, for omissions, a defendant must show that the affiant intentionally omitted information with an intent to mislead the magistrate judge and that the omitted information was material to the finding of probable cause. *Mays*, 134 F.3d 809; *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008).

Therefore, the Court agrees with the Government that the correct standard requires the Defendant to make a strong preliminary showing that the affiant omitted information with an intention to mislead and that the omission was material to the finding of probable cause.

6

**C.     Whether Defendant Met the Burden Under the Correct Standard**

Even when applying the higher standard, the Court finds that the Defendant has met his burden.

**1.  <u>Intent to Mislead</u>**

The evidence demonstrates that SA Williams omitted critical information with the purpose of misleading the issuing judge, though the Court finds no evidence of malice or ill-will in these actions. Rather, the omissions appear to stem from an overzealous attempt to secure the warrant during what SA Williams testified was an extended day and night operation (ECF No. 141 at PageID 374 and 391), perhaps driven by a sincere but misguided belief that certain details were not material to probable cause.

SA Williams, drawing on twenty-six years of law enforcement experience, certainly understands the critical role that source credibility and operations control play in establishing probable cause. (ECF No. 141 at Page ID 363.) He testified that he understands that operational integrity is paramount—that searching a source, their vehicle, and noting additional stops have a significant impact on the investigation. (ECF No. 141 at PageID 386–88.) The Court, like the Magistrate Judge, interprets his testimony to mean that he understands a controlled buy must be genuinely controlled. (ECF No. 141 PageID 439.)

Against this backdrop of experience and knowledge, several critical omissions stand out. The Confidential Source ("CS") referenced in the affidavit was untested and had never previously worked as a confidential source. (ECF No. 141 at PageID 311–12, 363–65, and 393–94.) Moreover, Mr. Huey, described in the affidavit as an "unwitting party," was, in fact, the original target of the investigation. (ECF No. 129-2 at Page ID 258; ECF No. 141 at Page ID 313 and 375–77.) Additionally, the CS and Mr. Huey made an extended stop at Mr. Huey's grandmother's

7

residence, where Mr. Huey went inside for an extended period. (ECF No. 141 at PageID 372–74 and 382–395). And Mr. Huey was not searched before entering Defendant's residence and, therefore, could have already possessed methamphetamine. (ECF No. 141 at PageID 386–88).

While SA Williams' judgment was flawed in this instance, his distinguished record of service suggests this was an isolated lapse rather than reflective of his typical practice or professional character. (ECF No. 129-2 at PageID 257; ECF No. 141 at PageID 363–64.) Nevertheless, the Court must conclude that the omission of such significant details, which directly affected the issuing judge's ability to assess source credibility and operational integrity, evinces an intent to present a stronger case for probable cause than actually existed. *See United States v. Cican*, 63 F. App'x 832, 837 (6th Cir. 2003) ("A fact finder may infer reckless disregard from circumstances evincing obvious reasons to doubt the veracity of the allegations.").

The characterization of Mr. Huey as an "unwitting party" when he was, in fact, the original target of the investigation, coupled with the omission of unmonitored stops at his grandmother's residence where he could have obtained methamphetamine, particularly indicates an intention to mislead the issuing judge about the reliability of the information and the integrity of the controlled operation.

The Magistrate Judge found that SA Williams had "obvious reasons to doubt the accuracy of the information contained" in the affidavit and that his omissions amount to a reckless disregard of the truth. (ECF No. 145 at PageID 435.) While the Magistrate Judge applied the reckless disregard standard, the Court, applying the higher standard, concludes that these omissions were made with the intent to mislead the issuing judge. *See Hale v. Kart*, 396 F.3d 721, 727 (6th Cir. 2005) (suggesting that strong material omissions could provide evidence of an intention to mislead).

8

## 2. <u>Materiality</u>

The omitted information was not merely incidental but crucial to the finding of probable cause. When viewed in totality, these omissions substantially undermine the probable cause determination made by the issuing judge. The Court's conclusion rests on several key factors.

First, the omitted information revealed significant credibility concerns. The CS was untested and previously unused as a confidential source but also had a clear vested interest in cooperating with law enforcement to avoid arrest. (ECF No. 141 at PageID 311–12, 363–65 and 393–94.) Similarly, Mr. Huey's role was mischaracterized in a way that obscured potential bias—rather than being an "unwitting participant" as described, he was actually the original target of the investigation, suggesting his statement implicating Defendant may have been self-serving. (ECF No. 129-2 at PageID 258; ECF No. 141 at PageID 313 and 375–77).

Second, critical operational deficiencies were concealed from the issuing judge. The purported controlled buy lacked fundamental safeguards. Mr. Huey was not searched before entering Defendant's residence, and there was an extended, unmonitored stop at another residence (ECF No. 141 at PageID 372–74 and 382–95). These deviations from standard controlled buy protocols significantly diminish the reliability of any evidence obtained.

Third, and perhaps most troubling, there was an absence of independent corroboration in the warrant and affidavit. The document provides no additional evidence tying the Defendant to the alleged drug transaction or even confirming that he resided at the address to be searched. (ECF No. 121-2.) This lack of corroboration becomes particularly significant given the credibility issues of the CS and Mr. Huey and the compromised nature of the controlled buy operation.

These omissions, viewed collectively, strike at the heart of the probable cause determination by undermining both the reliability of the information provided and the required

nexus between the place to be searched and the evidence sought. *See United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc). The Court finds that including the omitted information would have significantly altered the issuing judge's assessment of probable cause. *See id.* at 596 (material omissions that affect probable cause can invalidate a warrant)

Therefore, the Court finds that the Defendant has met his burden under the correct standard.

**D.     Probable Cause with the Omitted Information Included**

Having determined that material information was omitted with the intent to mislead, the Court must now consider whether probable cause exists when the information is included. Probable cause exists when there is a "fair probability" that contraband or evidence of a crime will be found in a particular place. *Gates*, 462 U.S. at 238–39. The issuing magistrate must consider the "totality of the circumstances" and make a practical, common-sense decision. *Id.* Here, the complete factual picture reveals several fatal deficiencies that are individually concerning, collectively decisive, and preclude a finding of probable cause.

First, the reliability of the CS and Mr. Huey crumbles under scrutiny. The CS was not only untested and previously unused but was actively cooperating to avoid her own arrest—a motivation that demands heightened skepticism (ECF No. 129-2 at PageID 311–12, 363–65, and 393–94). The credibility concerns extend to Mr. Huey, who emerges not as an unwitting participant but as the original target of the investigation, raising serious questions about the veracity of his statements implicating Defendant. (ECF No. 129-2 at PageID 258; ECF No. 141 at PageID 313 and 375–77).

Second, the operational integrity of the alleged controlled buy was fundamentally compromised. Mr. Huey was not searched before entering Defendant's residence, creating an obvious alternative source for any drugs later discovered. (ECF No. 141 at PageID 386–88). More troubling still, the CS and Mr. Huey made an extended unmonitored stop at Mr. Huey's

10

grandmother's house, where Mr. Huey went inside for several hours—a gap in surveillance that critically undermines the controlled nature of the operation. (ECF No. 141 at PageID 372–74 and 382–95).

Third, and perhaps most significantly, the investigation lacked any independent corroboration. There was no direct observation or recording of a drug transaction involving Defendant. (ECF No. 141 at PageID 387–91.) The affidavit provided no evidence confirming that Defendant even resided at the address to be searched, much less that he engaged in drug activity there. (ECF No. 129-2). This complete absence of corroboration is particularly problematic given the serious credibility issues with both informants.

Under these circumstances, a neutral magistrate could not find a fair probability that contraband or evidence of a crime would be found at Defendant's residence. The inclusion of the omitted information fundamentally undermines both the reliability of the information and the existence of a nexus between the alleged criminal activity and the place to be searched. *See United States v. McPhearson*, 469 F.3d 518, 526 (6th Cir. 2006) (holding probable cause requires nexus between the place to be searched and the evidence sought); *Carpenter*, 360 F.3d at 594.

The Government argues that even with the omitted information included, the affidavit established probable cause. The Court has carefully considered this argument but must disagree. The deficiencies revealed by the omitted information are not peripheral matters that can be overcome by other evidence—they go to the heart of the probable cause determination. The combination of unreliable informants, compromised operational controls, and a complete lack of independent corroboration fatally undermines any reasonable inferences that evidence of a crime would be found at the Defendant's residence.

E. **Good-Faith Exception under *United States v. Leon***

Having determined that the warrant lacked probable cause, the Court must next consider whether the good-faith exception salvages the search. The Government argues that even if the warrant was invalid, the evidence should not be suppressed under the good-faith exception established in *Leon*, 468 U.S. 897.

The good-faith exception does not apply when the issuing judge was misled by information in the affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth, and the affidavit was lacking in indicia or probable cause to render official belief in its existence entirely unreasonable. *Id.* at 923; *Brown v. Illinois*, 422 U.S. 590 (1975).

In this case, despite SA Williams' extensive experience and otherwise commendable service record, the Court cannot apply the good-faith exception. The affidavit contained material omissions made with an intention to mislead—though not maliciously—and when those omissions are corrected, the affidavit is so lacking in probable cause that no reasonable officer could rely upon it. *See McPhearson*, 469 F.3d at 525 (exception does not apply where "an affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable."). The omissions misled the issuing judge into believing probable cause existed when it did not. *See United States v. Rose*, 714 F.3d 362, 367 (6th Cir. 2013) ("[T]he good-faith exception does not apply to affidavits so lacking indicia of probable cause that a belief in the existence of probable cause would be objectively unreasonable.").

Moreover, it is well settled that suppression evidence is a "judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *Leon*, 468 U.S. at 906 (quoting *United*

*States v. Calandra*, 414 U.S. 338, 348 (1974). "[T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Herring v. United States*, 555 U.S. 135, 144 (2009). Central to the question of suppression is "the culpability of the law enforcement conduct." *Id.* at 143. "For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs." *Davis v. United States*, 564 U.S. 229, 237 (2011).

Here, while the Court acknowledges SA Williams' long service and the demanding circumstances under which he prepared the affidavit, the omissions were significant enough to require suppression. The deterrent value of excluding evidence obtained through a materially misleading warrant application outweighs the cost of suppression in this instance. This conclusion is necessary to maintain the integrity of the warrant process and ensure that the issuing judge receives complete and accurate information upon which to base probable cause determinations.[2]

## CONCLUSION

For the reasons stated above, the Court **OVERRULES IN PART** the Government's objections (ECF No. 149), **ADOPTS IN PART** the Magistrate Judge's Report and Recommendation (ECF No. 145), and **GRANTS** Defendant's Motion to Suppress (ECF No. 129). All evidence seized during the search of Defendant's residence is hereby suppressed.

**IT IS SO ORDERED**, this 15th day of November 2024.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE

---

[2] The Court also expresses concern that SA Williams did not return the warrant until 19 days after its execution. (ECF No. 141 at Page ID 390.) However, the Sixth Circuit has held that the return of a warrant is a ministerial act that does not void that warrant absent a showing of prejudice. *See United States v. McKenzie*, 446 F.2d 949, 954 (6th Cir. 1971); *Evans v. United States*, 242 F.2d 534, 536 (6th Cir. 1957).

13